**United States District Court**
For the Northern District of California

1
2
3
4
5                    UNITED STATES DISTRICT COURT
6                   NORTHERN DISTRICT OF CALIFORNIA
7
8    DINESH MANIAR,                          No. C-06-2537 MJJ (EMC)
9              Plaintiff,
10        v.                                 **REPORT AND RECOMMENDATION**
                                             **RE PLAINTIFF'S MOTION FOR**
11   CROMPTON KENNEDY FINE WINE              **DEFAULT JUDGMENT**
     PURVEYORS, *et al.*,
12                                           **(Docket No. 13)**
              Defendants.
13   _____/
14
15        Plaintiff Dinesh Maniar, an individual doing business as Diamond Oaks Winery ("Diamond
16   Oaks"), filed suit against Defendants Crompton Kennedy Fine Wine Purveyors ("Crompton
17   Kennedy") and Michael Trusiak for breach of contract, quantum valebant, fraudulent inducement,
18   and fraudulent misrepresentation.  On May 8, 2007, the Clerk of the Court entered default against
19   both Defendants, *see* Docket No. 24, and thereafter Judge Jenkins referred Mr. Maniar's motion for
20   default judgment to the undersigned for a report and recommendation.
21        Having reviewed the papers submitted by Mr. Maniar, and all other evidence of record, the
22   Court hereby recommends that Mr. Maniar's motion for default judgment be **GRANTED**.
23              **I.    FACTUAL & PROCEDURAL BACKGROUND**
24        In his complaint, Mr. Maniar alleges as follows.
25        Mr. Maniar owns various vineyards in Napa and Sonoma Counties and conducts his winery
26   business under the fictitious business name of Diamond Oaks.  *See* Compl. ¶ 2.  On February 15,
27   2005, Crompton Kennedy contacted Diamond Oaks regarding (1) the purchase of wines and (2) the
28   right to be Diamond Oaks's exclusive distributor in South Carolina.  *See id.* ¶ 6.  Subsequently,

**United States District Court**
For the Northern District of California

1  Crompton Kennedy requested an extension of credit from Diamond Oaks for the purpose of

2  purchasing approximately 2,741 cases of wine. *See id.* ¶ 7. Crompton Kennedy presented Diamond

3  Oaks with a credit application on Diamond Oaks's standard form. *See id.* & Ex. A (credit

4  application). In the credit application, Crompton Kennedy identified Joanne Crompton (its

5  president) and Mr. Trusiak as persons authorized to act on its behalf. *See id.*, Ex. A.

6      Because the credit facility requested by Crompton Kennedy exceeded its net worth (as well

7  as prior purchase and payment history), Diamond Oaks asked for additional financial support for

8  extension of the credit facility. *See id.* ¶ 9. On February 28, 2005, Mr. Maniar, as owner of

9  Diamond Oaks, had a telephone conversation with Mr. Trusiak. *See id.* ¶ 10. "[Mr.] TRUSIAK

10 represented himself as a high net worth individual, owning various businesses, yachts, homes and

11 other indications of financial success, and further represented that he was an honest and forthright

12 entrepreneur who had successfully completed many business ventures." *Id.* "[Mr.] TRUSIAK

13 scoffed at the idea that timely payment was an issue and represented, in substance, that he had the

14 personal financial ability to pay the full amount if he choose [sic] to do so." *Id.*

15     In reliance on the credit application and Mr. Trusiak's representations, Diamond Oaks

16 entered into a written agreement with Crompton Kennedy and Mr. Trusiak (as an individual) on

17 February 28, 2005. *See id.* ¶ 11 & Ex. B (Distribution and Wine Sale Agreement). Under the terms

18 of the contract, Crompton Kennedy and Mr. Trusiak agreed to buy various wines in an Initial Order

19 for a purchase price of $374,412. *See id.*, Ex. B (Agreement ¶¶ 1, 4). The full purchase price was

20 due within thirty days of shipment from Diamond Oaks. *See id.* (Agreement ¶ 4). The copy of the

21 Agreement provided to the Court was not signed by Mr. Maniar or any other representative of

22 Diamond Oaks. Mr. Trusiak, however, signed the Agreement. It also appears that he signed Ms.

23 Crompton's name to the Agreement (as president of Crompton Kennedy). *See id.*

24     From March to May 2005, Diamond Oaks shipped approximately 2,741 cases of wine,

25 valued at approximately $275,000, to Crompton Kennedy, as part of the Initial Order. *See id.* ¶¶ 12,

26 32; *see also* Maniar Decl. ¶¶ 9-10 & Ex. 4. Crompton Kennedy and Mr. Trusiak acknowledged

27 receipt of the goods but never paid Diamond Oaks in return. *See* Compl. ¶ 14. Crompton Oaks and

28

United States District Court
For the Northern District of California

1    Mr. Trusiak repeatedly represented to Diamond Oaks that it would be receiving payment

2    immediately but no payment was ever made.  *See id.* ¶¶ 16, 46-47.

3         Based on the above, allegations, Mr. Maniar asserted the following claims against both

4    Crompton Kennedy and Mr. Trusiak: (1) breach of contract, (2) quantum valebant, (3) fraudulent

5    inducement, and (4) fraudulent misrepresentation.  After Defendants failed to respond to the

6    complaint, Mr. Maniar asked for entry of default.  *See* Docket No. 12.  Default was entered by the

7    Clerk of the Court on May 8, 2007.  *See* Docket No. 24.

8         Subsequently, Mr. Maniar filed the currently pending motion for default judgment.  Judge

9    Jenkins referred the motion to the undersigned for a report and recommendation.  This Court then

10   asked Mr. Maniar to provide supplemental briefing and evidence in support of the motion for default

11   judgment.  *See* Docket No. 26.  Mr. Maniar did so.  Notably, in the supplement, Mr. Maniar stated

12   that, at present, he was seeking a default judgment against Mr. Trusiak only, and not Crompton

13   Kennedy, because Crompton Kennedy had filed a voluntary Chapter 11 bankruptcy petition, thus

14   staying Mr. Maniar's suit against Crompton Kennedy.  *See* Supp. Br. at 6.  The Court therefore

15   addresses the motion for default judgment with respect to Mr. Trusiak only.

16                               **II.    DISCUSSION**

17   A.    Service of Process

18        To grant or deny a default judgment, a court must first "assess the adequacy of the service of

19   process on the party against whom default is requested."  *Board of Trustees of the N. Cal. Sheet*

20   *Metal Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan.

21   2, 2001).  In this case, Mr. Maniar served Mr. Trusiak by personal delivery.[1]  *See* Docket No. 3.

22   Accordingly, service of process was proper.  *See* Fed. R. Civ. P. 4(e) (providing for service by

23   "deliver[y] [of] a copy of the summons and of the complaint to the individual personally").

24   ///

25   ///

26   _____

27        [1] The process server's affidavit addressed service on both Crompton Kennedy and Mr. Trusiak.
     *See* Docket No. 3.  According to the affidavit, both Crompton Kennedy and Mr. Trusiak were served
28   by leaving a copy of the summons and complaint with a person authorized to accept service -- namely,
     Mr. Trusiak.  With respect to Mr. Trusiak, this amounted to personal service.

B.      Default Judgment and *Eitel* Factors

After entry of a default, a court may grant a default judgment on the merits of the case. *See* Fed. R. Civ. P. 55. A default judgment may not be entered, however, against an infant or incompetent person unless represented in the action by a general guardian or other such representative who has appeared. *See id.* Furthermore, a default judgment may not be entered against an individual in military service until after the court appoints an attorney to represent the defendant. *See* 50 U.S.C. App. § 521. In the instant case, counsel for Mr. Maniar has provided a declaration which states that Mr. Trusiak is not an infant, incompetent person, or person in military service. *See* Graeb Decl. ¶ 3. Accordingly, the Court may consider whether a default judgment may be entered against Mr. Trusiak. The judgment sought by Mr. Maniar is damages in the amount of $374,000. *See* Mot. at 2.

"The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors that a court may consider in exercising that discretion include:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of
> plaintiff's substantive claim, (3) the sufficiency of the complaint, (4)
> the sum of money at stake in the action; (5) the possibility of a dispute
> concerning material facts; (6) whether the default was due to
> excusable neglect, and (7) the strong policy underlying the Federal
> Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Upon entry of default, the factual allegations of the plaintiff's complaint will be taken as true, except for those relating to the amount of damages. *See TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987).

The majority of the above factors weigh in favor of default judgment. For example, if the motion for default judgment were to be denied, then Mr. Maniar would likely be left without a remedy. *See Walters v. Shaw/Guehnemann Corp.*, No. C 03-04058 WHA, 2004 U.S. Dist. LEXIS 11992, at *7 (N.D. Cal. Apr. 15, 2004) ("To deny plaintiffs' motion [for default judgment] would leave them without a remedy. Prejudice is also likely in light of the merits of their claim."); *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery.").

United States District Court

For the Northern District of California

1  Also, the sum of money at stake in the action is appropriate -- limited to the amount of money due

2  under the written agreement between Diamond Oaks and Crompton Kennedy/Mr. Trusiak.  *See id.* at

3  1176 (stating that "the court must consider the amount of money at stake in relation to the

4  seriousness of Defendant's conduct").  Finally, because Mr. Trusiak has not filed an answer to Mr.

5  Maniar's complaint, there is little to suggest that there is a possibility of a dispute concerning

6  material facts, and it is unlikely that Mr. Trusiak's default was due to excusable neglect, especially

7  when Mr. Maniar served not only the summons and complaint but also the motion for default

8  judgment on Mr. Trusiak but still received no response.  *See* Duffy Decl., Exs. 2-3 (proofs of service

9  for motion for default judgment).

10       The only factors that deserve closer analysis are the second and third factors.  These factors

11  "'require that a plaintiff state a claim on which the [plaintiff] may recover.'"  *Philip Morris USA,*

12  *Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003).  In his supplemental briefing,

13  Mr. Maniar states that he seeks a default judgment against Mr. Trusiak on all four causes of action,

14  *i.e.*, breach of contract, quantum valebant, fraudulent inducement, and fraudulent misrepresentation.

15       Mr. Maniar has adequately stated a claim for breach of contract.  The agreement entered into

16  by Mr. Maniar, Crompton Kennedy, and Mr. Trusiak provides that it "shall be governed by and

17  construed and interpreted in accordance with the laws of the State of California."  Compl., Ex. B

18  (Agreement ¶ 20).  Under California law, "'[a] cause of action for damages for breach of contract is

19  comprised of the following elements: (1) the contract, (2) plaintiff's performance or excuse for

20  nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff.'"  *Armstrong*

21  *Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375, 1391 n.6 (2004).  Mr. Maniar

22  has pled all elements: (1) There is a contract between himself and Mr. Trusiak (as well as Crompton

23  Kennedy), *see* Compl. ¶ 11, 23 & Ex. B (Agreement); (2) Mr. Maniar performed under the contract

24  by, *inter alia*, shipping approximately 2,741 cases of wine to Crompton Kennedy, *see id.* ¶¶ 12, 24;

25  (3) Mr. Trusiak and Crompton Kennedy failed to pay for the wine, *see id.* ¶¶ 14, 25; and (4) Mr.

26  Maniar has been injured as a result.  *See id.* ¶ 26.  That Mr. Maniar did not sign the contract is not

27  material; the evidence presented by Mr. Maniar reflects that Mr. Trusiak signed the agreement.  *See*

28  Cal. U. Comm. Code § 2201(1) ("Except as otherwise provided in this section a contract for the sale

United States District Court

For the Northern District of California

of goods for the price of five hundred dollars ($500) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and *signed by the party against whom enforcement is sought* or by his or her authorized agent or broker.") (emphasis added).

Similarly, Mr. Maniar has adequately pled a claim for quantum valebant. Quantum valebant has been described by the California Supreme Court as a "common count . . . for the reasonable value of goods sold and delivered." *Weitzenkorn v. Lesser*, 40 Cal. 2d 778, 792 (1953); *see also Ruiz v. Norton*, 4 Cal. 355, 358 (1854) ("If there was [delivery], it is then very certain, that although the plaintiffs may not be allowed to recover on the contract, they may recover on a quantum valebant."); Black's Law Dictionary 1255 (7th ed. 1999) (defining "quantum valebant" as follows: "[a]t common law, a count in an assumpsit action to recover payment for goods sold and delivered to another" and "today . . . an equitable remedy to provide restitution for another's unjust enrichment"). In the complaint, Mr. Maniar has alleged that he sold approximately 2,741 cases of wine to Mr. Trusiak and Crompton Kennedy and that the cases were delivered to the same. *See* Compl. ¶¶ 30, 34.

In addition, Mr. Maniar has adequately stated a claim for relief for fraudulent inducement. "An action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a contract. The elements of fraud that will give rise to a tort action for deceit are: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 973-74 (1997) (internal quotation marks omitted). In the complaint, Mr. Maniar has alleged that Mr. Trusiak falsely represented that he had sufficient assets and liquidity to timely pay for the wine ordered from Diamond Oaks.[2] *See* Compl. ¶ 38. Mr. Maniar has further alleged that Mr. Trusiak knew the

---

[2] According to the complaint, Mr. Trusiak also represented to Diamond Oaks that he was an honest and forthright entrepreneur. *See* Compl. ¶ 10. However, this was nothing more than an opinion. *See* 1 Witkin Sum. Cal. Law Contracts § 300 ("[T]he recipient is not justified in relying on an assertion of opinion unless (a) the recipient stands in such a relation of trust and confidence to the person whose opinion is asserted that it is reasonable to rely on it; (b) the recipient reasonably believes that this person has special skill, judgment, or objectivity with respect to the subject matter; or (c) the recipient 'is for

United States District Court

For the Northern District of California

representations were false at the time they were made and made the representations with the intent of inducing Diamond Oaks to enter the contract. *See id.* ¶¶ 39-40, 42. Finally, Mr. Maniar has alleged that he relied on the representations (*i.e.*, he entered the contract), that his reliance was reasonable,[3] and that as a result of his reliance he suffered damages. *See id.* ¶¶ 41-43.

Finally, Mr. Maniar has adequately stated a claim for relief for fraudulent misrepresentation. The complaint contains allegations that Mr. Trusiak falsely represented that the wines were selling well and that payment would be forthcoming, that Mr. Trusiak knew the representations were false, then Mr. Trusiak made the representations to induce Mr. Maniar to defer legal action, that Mr. Maniar reasonably relied on the representations, and that Mr. Maniar suffered damages as a result. *See id.* ¶¶ 46-54.

Because Mr. Maniar has adequately stated a claim for relief with respect to all four causes of action and, because the remaining *Eitel* factors largely weigh in favor of Mr. Maniar, the Court recommends that his motion for default judgment be granted. The Court now turns to the issue of damages.

C. <u>Damages</u>

Although default has been entered in the case, the Court does not accept as true any allegations contained in the complaint relating to the amount of damages. *See TeleVideo Systems*, 826 F.2d at 917. Rather, Mr. Maniar has the burden of "proving up" his damages. *See Board of Trustees of the Boilermaker Vacation Trust v. Skelly, Inc.,* No. 04-02841 CW, 2005 WL 433462, at *2 (N.D. Cal. Feb. 24, 2005) ("Plaintiff has the burden of proving damages through testimony or written affidavit."). Mr. Maniar has met this burden with respect to the claims for breach of contract and quantum valebant, but not the fraud claims.

For a breach of contract, "'the theory is that the party injured by breach should receive as nearly as possible the equivalent of the benefits of performance.'" *Lisec v. United Airlines, Inc.*, 10

---

some other special reason particularly susceptible to a misrepresentation of the type involved.'").

[3] *See* 5 Witkin Sum. Cal. Law Torts § 813 (noting that "[t]he mere existence of an opportunity to investigate, or of sources of information, will not preclude the plaintiff from relying on the representations"; adding that a duty to investigate arises only when, *e.g.*, "[a] plaintiff . . . is aware of circumstances indicating that defendant's representations may be false").

1    Cal. App. 4th 1500, 1503 (1992); *see also Brandon & Tibbs v. George Kevorkian Accountancy*

2    *Corp.*, 226 Cal. App. 3d 442, 455 (1990) ("The aim is to put the injured party in as good a position

3    as he would have been had performance been rendered as promised."). In the instant case, Mr.

4    Maniar claims that he is entitled to $374,000 because, under the contract, Mr. Trusiak and Crompton

5    Kennedy agreed to pay $374,000 for the Initial Order of wines. *See* Compl., Ex. B (Agreement ¶ 4);

6    Maniar Decl., Ex. 3 (Exhibit A of Agreement). However, Mr. Maniar would be entitled to $374,000

7    only if he sent all of the wines in the Initial Order to Mr. Trusiak and Crompton Kennedy. Exhibit 4

8    of the Maniar declaration reflects that he did not do so. More specifically, 1,834 cases of wine were

9    not sent. *See* Maniar Decl., Ex. 4. The Court, therefore, recommends that Mr. Maniar be awarded

10   only $274,550 for the breach-of-contract claim. This figure represents the value of the wines that

11   were sent to Mr. Trusiak and Crompton Kennedy. *See id.* Ordinarily, Mr. Maniar would also be

12   entitled to the profits that he would have made on the 1,834 cases of wine that were not sent, as this

13   would be part of his expectation damages, but he has not offered any proof as to what his profits

14   would have been for those wines.

15          For quantum valebant, a plaintiff is entitled to the reasonable value of the goods sold and

16   delivered. *See Weitzenkorn*, 40 Cal. 2d at 792. Mr. Maniar has provided sufficient evidence

17   demonstrating that the reasonable value of the wines sent to Mr. Trusiak and Crompton Kennedy

18   was $274,550. Exhibit 4 of the Maniar declaration "identifies the categories and amounts of wines

19   ordered . . . . as well as the actual quantity shipped, the case price, and the amount billed." *Id.* ¶ 10;

20   *see also id.*, Ex. 4 (spreadsheet). The fact that Mr. Trusiak and Crompton Kennedy were willing to

21   pay $274,550 for the wines sent as part of an arms length negotiation adequately establishes the

22   reasonableness of the value.

23          With respect to fraudulent inducement, as in any tort, "damages are normally awarded for the

24   purpose of compensating the plaintiff for injury suffered, *i.e.*, restoring the plaintiff as nearly as

25   possible to his or her former position, or giving some pecuniary equivalent." 6 Witkin Sum. Cal.

26   Law Torts § 1548; *see also* Cal. Civ. Code § 3333 ("For the breach of an obligation not arising from

27   contract, the measure of damages, except where otherwise expressly provided by this code, is the

28   amount which will compensate for all the detriment proximately caused thereby, whether it could

**United States District Court**
For the Northern District of California

1   have been anticipated or not.").  Mr. Maniar has failed to show that he is entitled to $374,000 for the

2   fraudulent inducement committed by Mr. Trusiak.  The $374,000 amount is what Mr. Maniar was

3   entitled to had all parties performed under the contract.  Fraudulent inducement is a tort claim, not a

4   contract claim.  *See Lazar v. Superior Court*, 12 Cal. 4th 631, 645 (1996) ("has long been the rule

5   that where a contract is secured by fraudulent representations, the injured party may elect to affirm

6   the contract and sue for the fraud.").  For this tort claim, Mr. Maniar would be entitled to the sum of

7   money that would restore him to his former position -- *e.g.*, the expense of making and bottling the

8   wines, the expense of shipping the wines, and so forth.  However, Mr. Maniar has not presented any

9   evidence as to these costs.  Accordingly, the Court recommends that no damages be awarded for this

10  cause of action.

11          Finally, Mr. Maniar has failed to establish that he should be awarded $374,000 for the

12  fraudulent misrepresentation claim.  According to the complaint, Mr. Trusiak's fraudulent

13  misrepresentation was that payment for the wines would be forthcoming, and, in reliance, Mr.

14  Maniar deferred filing a lawsuit.  Mr. Maniar's damages, therefore, would arise from his act of

15  deferring the lawsuit.  Mr. Maniar has not provided any evidence as to what damages he has

16  sustained by virtue of deferring the lawsuit.

17          Accordingly, the Court recommends that Mr. Maniar be awarded a total of $274,550, which

18  represents damages for the breach-of-contract and quantum valebant claims.

19                          **III.   RECOMMENDATION**

20          For the foregoing reasons, the Court recommends that Mr. Maniar's motion for default

21  judgment be granted and that he be awarded $274,550 in damages.

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1        Mr. Maniar shall, upon receipt, immediately serve a copy of this report and recommendation

2    on all Defendants.  Any party may file objections to this report and recommendation with the district

3    judge within ten days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P.

4    72(b); Civil L.R. 72-3.

5

6        IT IS SO ORDERED.

7

8    Dated:  July 17, 2007

9    _____

10   EDWARD M. CHEN
     United States Magistrate Judge

**United States District Court**
For the Northern District of California

10